IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAVYN ASHLI MARTINEZ,

　　　　　Plaintiff,

vs.                                                    1:23-cv-00004-WJ-JMR

MARTIN O'MALLEY,[1] Commissioner
of the Social Security Administration,

　　　　　Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## ON MOTION TO REVERSE OR REMAND ADMINISTRATIVE AGENCY DECISION

THIS MATTER comes before the Court on plaintiff Ravyn Ashli Martinez's Motion to
Reverse or Remand Administrative Agency Decision with supporting memorandum (Doc. 13),
which was fully briefed on September 6, 2023.  *See* Docs. 23–25.  Pursuant to 28 U.S.C.
§§ 636(b)(1)(B) and (b)(3), the Honorable William P. Johnson referred this matter to me for a
recommended disposition.  Doc. 16.  Having meticulously reviewed the entire record and being
fully advised in the premises, I recommend that the Court GRANT IN PART Ms. Martinez's
motion.

## I.　　Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final
decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on
December 20, 2023, and is automatically substituted as the defendant in this action.  FED. R. CIV.
P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116,

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court

with a sufficient basis to determine that appropriate legal principles have been followed is

grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal

quotation marks, brackets, and quotation omitted).  The Court must meticulously review the

entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

　　　　"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (quotation omitted).  A decision

"is not based on substantial evidence if it is overwhelmed by other evidence in the record or if

there is a mere scintilla of evidence supporting it."  *Id.* (quotation omitted).  While the Court may

not reweigh the evidence or try the issues de novo, its examination of the record as a whole must

include "anything that may undercut or detract from the ALJ's findings in order to determine if

the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)

(citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence

does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*,

489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th

Cir. 2004)).

## II.　　Applicable Law and Sequential Evaluation Process

　　　　To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

## III.    Background and Procedural History

Ms. Martinez was born in 1989, dropped out of school after the seventh grade, and worked as a hotel housekeeper and then as a part-time caregiver for her stepfather.  AR 41, 214, 241, 251–52[4]  She filed an application for Supplemental Security Income ("SSI") on August 10,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 9-1 through 9-9 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

2020—alleging disability since June 5, 2019,[5] due to learning disabilities, major depressive

disorder, post-traumatic stress disorder, generalized anxiety disorder, bipolar disorder, diabetes,

high blood pressure, liver lesions, asthma, stomach ulcers, fibromyalgia, and panic disorder.  AR

38, 214–19, 240.  The Social Security Administration ("SSA") denied her claims initially on

December 8, 2020.  AR 135–38.  The SSA denied her claims on reconsideration on October 29,

2021.  AR 142–44.  Ms. Martinez requested a hearing before an ALJ.  AR 145–48.  On May 13,

2022, ALJ Kari Deming held a hearing.  AR 34–56.  ALJ Deming issued her unfavorable

decision on August 29, 2022.  AR 14–33.

The ALJ found that Ms. Martinez had not engaged in substantial, gainful activity since

July 6, 2020—her application date.  AR 19.  At step two, the ALJ found that Ms. Martinez

suffered from the following severe impairments:  agoraphobia, generalized anxiety disorder,

learning disorder, major depressive disorder, mood disorder, panic disorder, post-traumatic stress

disorder, and sleep disorder.  *Id*.  At step three, the ALJ found that none of Ms. Martinez's

impairments, alone or in combination, met or medically equaled a Listing.  AR 20–22.  Because

the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Martinez's

RFC.  AR 22–27.  The ALJ found that Ms. Martinez had the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations:
>
> - understand and remember simple instructions;
> - engage in occasional interaction with supervisors and coworkers, but no more than brief, superficial contact, such as passing in the hall, with the public;
> - engage in no team or tandem tasks;
> - carry out simple instructions;
> - engage in goal-oriented, rather than on-demand, production;
> - never work in proximity to workplace hazards; and

---

[5] At the hearing, Ms. Martinez amended her alleged onset date to July 6, 2020, which is her protective filing date.  AR 17, 38, 211–13.

4

- engage in predictable work activity, defined as that with only minimal
  changes in the work setting or tasks performed.

AR 22–23.

At step four, the ALJ concluded that Ms. Martinez did not have any past relevant work.

AR 27.  The ALJ found Ms. Martinez not disabled at step five because she could perform jobs

that exist in significant numbers in the national economy—such as marker, routing clerk, and

mail clerk.  AR 28.

**IV.    Ms. Martinez's Claims**

Ms. Martinez raises two claims:  (1) the ALJ erred in evaluating the opinions of Dr.

Danielle Farrar, Mona Sandoval, LMSW, and Brandy Heaton, NP; and (2) the ALJ erred by

rejecting all of the medical opinions about her mental limitations and failed to support her mental

RFC with substantial evidence.  *See* Doc. 13-1 at 7–13.  For the reasons explained below, I find

that the ALJ erred by failing to support Ms. Martinez's mental RFC with substantial evidence.  I

therefore recommend that the Court grant Ms. Martinez's motion in part and remand this case.  I

do not address Ms. Martinez's first argument, as it "may be affected by the ALJ's treatment of

this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.    Analysis**

Ms. Martinez argues that the ALJ erred by rejecting all of the medical opinions about her

mental limitations.  Doc. 13-1 at 11–13.  First, she argues that the ALJ committed legal error by

not supporting the mental RFC with medical opinion evidence.  *Id.* at 11–12.  Second, she argues

that, because the ALJ rejected all of the medical opinions about her mental limitations, the

mental RFC is not supported by substantial evidence.  *Id.* at 12–13.

The Commissioner responds that the "ALJ alone is responsible for assessing a claimant's

RFC and that the RFC does not need to mirror any opinion in the record."  Doc. 23 at 15.  The

Commissioner also claims that the ALJ supported the mental RFC with substantial evidence by "adopting a middle ground" between conflicting medical opinions.  *Id.*

I am not persuaded that the ALJ committed legal error by rejecting all of the medical opinions about her mental limitations.  However, I agree with Ms. Martinez that the ALJ failed to support her mental RFC with substantial evidence, and I recommend the Court remand on this basis.

1. **The ALJ did not commit legal error by not supporting the mental RFC with medical opinion evidence.**

Ms. Martinez's argument that the ALJ committed legal error by not supporting the mental RFC with medical opinion evidence is without merit.

In formulating a claimant's RFC, "an ALJ is permitted, and indeed required, to rely on *all of* the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071–72 (10th Cir. 2013) (citing SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996)). The record evidence an ALJ may rely upon includes a claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and effects of symptoms.  SSR 96–8p, 1996 WL 374184, at *5.

In addition, the Tenth Circuit has squarely rejected the argument that "the components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  In *Chapo*, "the physical RFC . . . findings deviate[d] from the one medical opinion given weight by the ALJ" and with respect to "the mental RFC, . . . the only medical opinion was given virtually no

weight."[6]  *Id.*  Nonetheless, the Tenth Circuit found no error in the RFC assessment:

> [T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.  The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.  We have thus rejected the argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category.

*Id.* at 1288–89 (cleaned up) (internal citations and quotations omitted).

Ms. Martinez cites no binding case law requiring an ALJ to rely on one or more medical opinions in formulating a claimant's mental RFC.  Instead, Ms. Martinez relies on a number of out-of-circuit and district court cases, none of which the Court finds persuasive.  *See* Doc. 13-1 at 11–13.  Ms. Martinez does not cite any binding precedent for her assertions, which conflict with binding Tenth Circuit precedent.  *See Chapo*, 682 F.3d at 1288–89 ("there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.  The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.")  The Court therefore declines to find that the ALJ committed legal error by failing to support her mental RFC findings with medical opinion evidence.

### 2. The ALJ failed to support Ms. Martinez's mental RFC with substantial evidence.

Ms. Martinez argues that the ALJ failed to support her mental RFC with substantial evidence.  Doc. 13-1 at 12.  She argues that the "ALJ found literally every mental health opinion to be unpersuasive," leaving the mental RFC unsupported by substantial evidence.  *Id.*  She

---

[6] *Chapo* was decided when the applicable procedure involved assigning "weight" to a medical opinion.  The regulations have since been amended to instruct ALJs to evaluate the "persuasiveness" of an opinion instead.  Nonetheless, the Court finds that *Chapo's* reasoning remains applicable under the amended regulations.

asserts that the ALJ created her mental RFC "out of whole cloth."  *Id*.  The Commissioner asserts that the ALJ adopted a "middle ground" from the conflicting opinions on Ms. Martinez's mental RFC, and that her mental RFC is supported by substantial evidence.  I agree with Ms. Martinez.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945."  SSR 96-8p, 1996 WL 374184, at *1.  This means the ALJ must consider how the claimant's impairments affect her physical abilities, mental abilities, and other abilities.  20 C.F.R. § 416.945(b)–(d).  An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record.  SSR 96-8p, 1996 WL 374184, at*1–2.  The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'"

*Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6). Particularly,

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at*7. If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009–10. The ALJ need not discuss every piece of evidence in the record, but the ALJ must identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

The ALJ conducted only a cursory analysis of Ms. Martinez's mental limitations and failed to support the mental RFC limitations with substantial evidence. Because the ALJ rejected all of the medical opinions about Ms. Martinez's mental limitations, the ALJ's mental RFC finds no support in the medical opinions. The bulk of the ALJ's mental RFC discussion is summary of Ms. Martinez's testimony (AR 23–24), and summary of Ms. Martinez's medical treatment (AR 25–26). The ALJ included only a single paragraph of analysis attempting to tie the mental limitations to the summary sections:

> In sum, I find the claimant has no exertional limitations, but she would have non-exertional limitations due to her impairments. As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the record and weigh against a finding of disability. The

claimant's testimony regarding ongoing disabling symptoms is not supported by the record. Rather, the record reflects improvement in her mental impairments with medication. No significant ongoing side effects to her medications were noted. Mental status examinations note depressed mood at times. Her memory was good. Her attention was good. Her concentration was fair. Insight and judgment were good and fair. Her affect was appropriate. Thought content was normal. She has been described as alert and oriented times four. She denied thoughts of suicide. Motivation and energy levels were fair to low, but her sleep had improved. At her most recent exam, it was noted that she had not had a panic attack in the past month. She was calmer than usual, and she had days where she felt energized. The claimant's anxiety and depression were often exacerbated by situational stress, such as getting COVID-19 while out in public and losing loved ones to the virus. The claimant is able to drive, though she has anxiety traveling on the highways. She lives independently with her two children. She reported that she can manage her personal care, prepare small meals, manage money, use a computer, and [d]o simple household chores (C5E/3-4). Therefore, I find the claimant can understand and remember simple instructions; she can engage in occasional interaction with supervisors and coworkers, but no more than brief, superficial contact, such as passing in the hall, with the public; she can engage in no team or tandem tasks; she can carry out simple instructions; she can engage in goal-oriented, rather than on-demand, production; she can never work in proximity to workplace hazards; and she can engage in predictable work activity, defined as that with only minimal changes in the work setting or tasks performed.

AR 25–26.

This paragraph falls far short of the requirement that the ALJ's narrative discussion describe "how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at*7. The ALJ fails to cite "specific medical facts" and/or "nonmedical evidence" that support any of mental RFC limitations. *Id.* For example, the ALJ offers no explanation of how the evidence supports her conclusion that Ms. Martinez "can engage in *occasional* interaction with supervisors and coworkers." AR 26 (emphasis added). In addition, it is unclear to the Court what evidence supports the ALJ's finding that Ms. Martinez can engage in "brief, superficial contact, such as passing in the hall, with the public" or that she can "engage in no team or tandem tasks." *Id.* Finally, the Court has no inkling as to why the ALJ found that Ms. Martinez "can engage in goal-oriented" but not "on-demand, production," or why the ALJ concluded that

she can "engage in predictable work activity, defined as that with only minimal changes in the work setting or tasks performed." *Id*.

The Commissioner fails to show that the ALJ supported Ms. Martinez's mental RFC with substantial evidence.  The Commissioner asserts that "the ALJ found that [Ms. Martinez] was more limited than the findings of the State agency psychological consultants and Dr. Farrar but less limited than the opinions of Ms. Sandoval and NP Heaton, and that this 'middle ground' was entirely appropriate."  Doc. 23 at 15–16.  The Commissioner asserts that the Tenth Circuit endorsed this "middle ground" approach in *Smith v. Colvin*, 821 F.3d 1264 at 1268 (10th Cir. 2016) and  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir.2012).  *Id*. at 16.  Finally, the Commissioner asserts that the ALJ was "entitled to resolve such evidentiary conflicts and did so."  *Id.* at 15 (citing *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016)).

However, the cases the Commissioner cites are inapposite.  Unlike the cases the Commissioner cites, the ALJ here did not adopt any kind of "middle ground" between the medical opinions.  Instead, the ALJ rejected all of the medical opinions, and then promulgated a mental RFC that is not supported by substantial evidence.

In *Smith*, the Tenth Circuit affirmed an unfavorable disability determination where the record contained conflicting medical opinions regarding the claimant's fingering, handling, and feeling abilities, and the ALJ "arrived at an assessment between the two medical opinions without fully embracing either one."[7]  *Smith*, 821 F.3d at 1268.  It did so by relying on the approach the Tenth Circuit "upheld" in *Chapo*, 682 F.3d at 1288.  In *Chapo*, the claimant argued that her RFC was not supported by substantial evidence because

---

[7]  The ALJ in *Smith* gave one of the conflicting medical opinions "great weight" and the other "probative weight."  *Smith v. Colvin*, No. 14-CV-02398-CMA, 2015 WL 3457840, at *3 (D. Colo. May 29, 2015), aff'd, 821 F.3d 1264 (10th Cir. 2016).

> the conclusion that she can do light work [was] not found in the opinions of either Dr. Amin or Dr. Krause—the former did not find physical limitations that would restrict Ms. Chapo to light work, while the latter did not find physical capacities that would allow her to do light work.  She insists that the ALJ was not authorized to determine her RFC by splitting the difference between the two opinions.

*Chapo*, 682 F.3d at 1288.  The court pointed out that the "ALJ did not triangulate from the two opinions," noting that the ALJ had rejected Dr. Krause's opinion and accorded weight *only* to Dr. Amin's opinion.  *Id*.  The court noted that the RFC that the ALJ adopted was more favorable to the claimant than Dr. Amin's opinion and, while the ALJ could have been more explicit in tying this "mitigating gesture to the evidence in the record," the court further noted that it was "aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit."  *Id*.  The *Chapo* court issued a narrow holding explaining that "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."  *Id*.

Here, unlike *Chapo* and *Smith*, the ALJ did not find any of the medical opinions to be persuasive, nor did the ALJ "temper" those opinions for Ms. Martinez's benefit.  *See* AR 26–27 .  Instead, the ALJ found all of the medical opinions about Ms. Martinez's mental limitations unpersuasive.  *Id*.  The mental RFC promulgated by the ALJ, therefore, finds no support in any of the medical opinions in this case.  The ALJ did not, as the Commissioner claims, adopt a "middle ground" between the medical opinions.  Instead, the ALJ rejected all of the medical opinions, and promulgated a mental RFC that is not supported by substantial evidence.  Because the ALJ did not support Ms. Martinez's mental RFC limitations with substantial evidence, I recommend that the Court remand this case to the Commissioner.

## VI.    Conclusion

For the reasons stated above, I find that the ALJ failed to support Ms. Martinez's mental RFC with substantial evidence.  I therefore recommend that the Court grant Ms. Martinez's motion (Doc. 13) in part and remand this case to the Commissioner for further proceedings consistent with these recommendations.  I do not address Ms. Martinez's argument that the ALJ erred in evaluating the persuasiveness of the medical opinions about her mental limitations, as this argument "may be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d 1299.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**

---

JENNIFER M. ROZZONI
United States Magistrate Judge